IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO.  CCB-16-0267** |
| v. | * | |
| | * | |
| **DANTE BAILEY, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |
| | * | |
| | ******* | |

## GOVERNMENT'S MOTION *IN LIMINE*
## TO ADMIT DANTE BAILEY'S 2006 JAIL LETTERS

The government respectfully moves to admit letters mailed by Dante Bailey to a Bloods associate named Kevin Gardner from the Maryland Correctional Institute in Hagerstown, Maryland ("MCIH") in 2006.  The letters will be authenticated by lay witnesses who are familiar with Bailey's handwriting; by the appearance of the envelope, which bears Bailey's return address and inmate number, Gardner's address, and a mail-room stamp from MCIH; and by their contents, which point to Bailey as the only possible author.  In one letter (hereinafter, "Letter 1"), Bailey describes his plans to form a new Bloods chapter in the Windsor Mill/Forest Park area with approval from Bloods leaders in other states.  In another letter (hereinafter, "Letter 2"), Bailey describes in detail prior murders he committed to avenge the deaths of particular criminal associates.  For the reasons set forth below, Letter 1 is admissible as intrinsic evidence of the charged racketeering conspiracy, and Letter 2 is admissible under Federal Rule of Evidence 404(b) to prove motive, intent, knowledge, and *modus operandi*.

1

**RELEVANT FACTS[1]**

On January 18, 2016, Kevin Gardner, a/k/a "Hop," was arrested in the area of Windsor Mill Road and Monticello Road by members of the Baltimore Police Department. A search of his vehicle resulted in the recovery of a Smith & Wesson .32 caliber revolver, roughly 70 grams of heroin, and personal papers, including mail from Dante Bailey. Gardner was charged in Baltimore City Circuit Court with possession of a firearm by a felon and possession with intent to distribute heroin, among other crimes.[2]

Following his arrest, Gardner met with federal investigators for a proffer session and provided a wealth of information about Bailey and his criminal activities. During the meeting, Gardner was shown a copy of the letters recovered during his arrest, and he identified them as letters Bailey had mailed to him from prison roughly a decade earlier, in which Bailey had attempted to recruit him to join the Bloods. Gardner explained that he had been saving the letters to give back to Bailey so that Bailey could use them in a rap song.

The mail from Dante Bailey is attached as Exhibit 1. It includes an envelope addressed to "Mr. Kevin Gardner, 25 Tenthill Lane, Apt D, Balto., Maryland," with a return address of "Mr. D. Bailey" with inmate number "324-206." *See* Ex. 2, at 1. The return address is obscured, but the

---

[1] A more detailed discussion of the facts of the case is contained in the Government's Consolidated Motions Response. ECF 779.

[2] The case against Gardner was dismissed in early 2017, when the arresting officers were federally indicted on charges of racketeering and corruption. Based on information and belief, Gardner died of natural causes on March 11, 2018. As a result, the Government will not be calling a witness to testify about the recovery of the jail letters. The absence of such testimony, however, is not a bar to their admission. Because Bailey has no expectation of privacy in letters that he mailed to a third party and that were recovered from that third party, there is no basis upon which to suppress the evidence. Further, as discussed below, the letters can be authenticated pursuant to Rules 901(b)(2) and (b)(4) by witnesses familiar with Bailey's handwriting, as well as by their appearance and contents.

reverse side of the envelope bears a red mail-room stamp that reads: "MD. CORRECTIONAL INSTITUTION-HAGERSTOWN," with the date "JUN 26 2006." *Id.* at 2. The letters are written in Bailey's distinctive handwriting, which includes a mix of uppercase and lowercase letters. Several of the letters reference other members of MMP, such as "Huggy" (a known alias of Dwight Jenkins), *see* Ex. 2, at 12, "Jakey" (a known alias of Jacob Bowling), *see id.*, and "Oohk" (a known alias of Takuma Tate), *see* Ex. 2, at 14.

Letter 1 is addressed to "K" (short for Kevin) and signed "Gutta," a known alias of Bailey's. *See* Ex. 2, at 3–6. In it, Bailey describes his plans to form a new Bloods chapter in the Windsor Mill/Forest Park area of Baltimore and recruits Gardner to help him make the chapter successful. The letter reads:

> K,
>
> I need you to understand something. Have you ever day dreamed about being on a team of real men who really stand firm on loyalty? Do you know what it feels like to be in need of help & be able to look in your phone & call 100 different mafuckaz [sic] that are obligated to assist you? Do you ever wonder why these kids out there don't stay loyal to one another? It is because we fail to teach them the true meaning of it. We fail to lay down the laws & principles of what real men do. I vision vividly, me raising an army of true warriors male & female. I need your help.
>
> Listen, I have been plugged into the mainstream of the United Blood Nation. I have full support from New York & California & Chicago. I have been granted & blessed with the greenlight to branch to Baltimore. Where we grew up at "Forest Heights" / Forest Park & Windsor Mill is the headquarters for my chapter of the Damu Nation Kalled Gangsta Killa Blood a.k.a. G*Shine. "5200" means Gangsta Killa Wolf Pack Nigga. I'm informing you because you are my closest road dog & I want you on my team to reap the benefits of being in. These people got there #'s changed because of that reason. "You are not Damu"….
>
> Also, my brothers uptop want to flood you, but I told them you are not Blood & they don't deal with nothing but that. I love you Hop, I need you to make that move for the benefit of US. I want you to unify our neighborhood on some get down or lay down shit. I also want you to spread B*Love to other neighborhoods. This will strengthen our cause. I have contacts for you for anything you can possibly think of, legal & illegal. It's our time. Please write me back ASAP.

3

> 'Ya Buzzin'
> Gutta

*Id.* Letter 1 also includes two typewritten pages titled "THE ENTERPRISE," which are annotated by Bailey and provide more details about the history and goals of the Bloods gang.

Letter 2 is dated November 27, 2006. *See* Ex. 2, at 13–16. In it, Bailey alludes to having put in "work" to get someone "hit" and asks Gardner to help collect payment. *Id.* at 14, 16. He also recounts, in detail, acts of violence he has carried out to avenge the deaths of various criminal associates. *Id.* at 15. The letter reads, in relevant part:

> I will be coming off lock-up on December the 9th, Oohk's birthday, 2 days after mines.[3] I am trying to have my shit in order, because if it don't make dollars it don't make sense to me anymore & I can't let the G wall stagnate my pockets growth. I've tried to call Hugg to collect the payment, but to no avail. If it weren't for the starving stomachs of my little homies who twirked that move, I wouldn't be sweat'n it. Let Hug know I said to just do what he can. Enclosed is the proof of work. In the event that Hug cannot help, please make a collection plate around the way & cop what you can.
> 
> …
> 
> In my lifetime, I've caused many deaths, by words or by my own hand. I've also lost quite a few soljahs [sic], but the one that hurt the most was Cockdsal. When Twan, Bill, Che-Che & Keith died, I felt nothing accept [sic] the adrenaline to avenge. Twan, I have grown to let go. Bill, I have shot, hopped out & stabbed so many people in that vicinity on G.P.,[4] as well as got this chump in here touched, that I know Lil Head is smiling. Che-Che, I know nothing of his murderer, but I will. Keith, I will make him smile by tracking down Mark A. Beckwith, age 57, of Bel Air.[5]

---

[3]   Dante Bailey's birthday is, in fact, December 7.

[4]   Investigators believe "G.P." is a reference to Gwynns Falls Park, Gwynn Oak Park, or Gwynns Falls Parkway, all of which are near the Windsor Mill and Forest Park area.

[5]   Baltimore Sun articles from the relevant time period explain that on March 17, 2006, Mark A. Beckwith of Bel Air fatally shot Keith D. Love as Love was attempting to rob him outside the Cross Keys shopping plaza off Falls Road in Baltimore. According to the article, Beckwith was on his way to the Columbia Bank when he was attacked by three men. He fought off the attackers using a gun he was carrying legally. *See* "Bel Air man named as Cross Keys shooter," by M. Dolan, The Baltimore Sun, Mar. 19, 2006, *accessible at* http://www.baltimoresun.com/news/bs-xpm-2006-03-19-0603190089-story.html (last visited Feb. 23, 2019) (attached as Exhibit 2);

4

>   …
>
>   \* The dude got hit nicely this second time. The first time was rated PG-13. This was A.

*Id.* at 14–16.

## ARGUMENT

### A. The 2006 Jail Letters Can Be Authenticated Under Rule 901(b)(2) and (b)(4)

Federal Rule of Evidence 901 provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The Fourth Circuit has explained that "[t]he burden to authenticate under Rule 901 is not high—only a prima facie showing is required." *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009).

Rule 901(b) provides a non-exhaustive list of types of evidence that satisfy the authentication requirement. Two of them are relevant here. First, the jail letters can be authenticated by "[a] nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation." Rule 901(b)(2); *see also United States v. Mangarella*, 489 Fed. App'x 648, 651 (4th Cir. 2012). Here, lay witnesses who are familiar with Bailey's handwriting will testify that they recognize the handwriting in the jail letters to be his. *See Rogers v. Ritter*, 79 U.S. 317, 322 (1870) ("[I]n the varied affairs of life there are many modes in which one person can become acquainted with the handwriting of another, besides having seen him write or corresponded with him. There is no good reason for excluding any of these modes of getting information."). Furthermore, the jury will be presented with other documents recovered

---

"Documents detail Cross Keys shooting," by G. Sentementes & J. Bykowicz, The Baltimore Sun, Mar. 21, 2006, *accessible at* http://www.baltimoresun.com/news/bs-xpm-2006-03-21-0603210220-story.html (last visited Feb. 23, 2019) (attached as Exhibit 3).

5

from residences and jail cells associated with Bailey, written in the same distinctive hand, and they will be able to make their own comparison. *See United States v. Dozie*, 27 F.3d 95, 98 (4th Cir. 1994) (holding that "expert opinion on handwriting is not necessary" and that "it was permissible for the jury to compare the handwriting" on two different tax returns).

Second, the jail letters can be authenticated by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Rule 902(b)(4). Here, the jail letters bear a number of distinctive characteristics that will authenticate them as written by Bailey. There is the envelope with Bailey's name and inmate number in the return address. There is the mail-room stamp from MCIH, where Bailey was housed in 2006. There is the fact that one of the letters is signed "Gutta." There is the reference to where Bailey grew up—at "Forest Park & Windsor Mill." There is the reference to Bailey's birthday on December 7. There are the references to Bailey's associates, "Huggy," "Jakey," and "Oohk." And there is the plan to form a Bloods subset headquartered at Windsor Mill and Forest Park, with the blessing of Bloods leaders in other states. Taken together, these characteristics are more than sufficient to meet the low bar—a *prima facie* showing—for authenticating evidence under Rule 901.

### B. Letter 1 Is Admissible Because It Is Intrinsic to the Charged Racketeering Conspiracy

Federal Rule of Evidence 404(b) does not limit the admission of intrinsic evidence. As the Fourth Circuit has explained, "evidence of uncharged conduct is not considered 'other crimes' evidence"—and is therefore not subject to a Rule 404(b) analysis—"if it arose out of the same … series of transactions as the charged offense, … or if it is necessary to complete the story of the crime [on] trial." *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994). Put another way, "[o]ther acts are intrinsic when they are 'inextricably intertwined or both acts are part of a single

criminal episode or the other acts were necessary preliminaries to the crime charged.'" *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (quoting *United States v. Chin*, 83 F.3d 83, 87, 663 (4th Cir. 1996)); *see also United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) (evidence is "intrinsic" if it provides "context relevant to the criminal charges").

Thus, the government may offer evidence of uncharged conduct when it is necessary to complete the story of the charged offenses or "explains the relationship of parties or the circumstances surrounding a particular event." *United States v. Basham*, 561 F.3d 302, 327 (4th Cir. 2009). Evidence may be necessary to complete the story of the crime on trial where, for example, it shows how the participants in an alleged conspiracy "first started working together" and "what roles they had in the conspiracy." *United States v. Hudson*, 2012 WL 207722 at *2 (4th Cir. Jan. 23, 2012) (unpublished); *see also United States v. Nolberto Pena*, 200 WL 541087, at *6 (4th Cir. Apr. 27, 2000) (unpublished) ("[T]he previous drug distribution activities between Crumity and Ward provided the context for the charged conspiracy by revealing important background information about Ward and explaining how Ward and Crumity came to be engaged in distribution activities during the time frame of the indictment."); *United States v. Lokey*, 945 F.2d 825, 834 (5th Cir. 1991) (evidence of drug deals consummated prior to the charged conspiracy held not to be extrinsic because it showed how the conspiracy came about, how it was structured and how the defendant became a member).

Here, Letter 1 is intrinsic to the charged racketeering conspiracy because it describes Bailey's plans to form the conspiracy in question. The Second Superseding Indictment charges Bailey and the other defendants with conspiring to participate in a racketeering enterprise, namely, a subset of the Bloods gang called Murdaland Mafia Piru (MMP) that had its headquarters in the 5200 block of Windsor Mill Road, at the intersection of Windsor Mill Road and Forest Park

7

Avenue. ECF 515, at 3–6. The indictment alleges that Bailey was the mastermind of MMP: he was "responsible for writing and disseminating many of MMP's charter documents beginning in 2009 while he was incarcerated," and, "[a]fter his release from prison in 2011, [he] flew to California to meet with west coast leaders of [Tree Top Piru] and gain their official approval for the MMP set in Maryland." ECF 515, at 3. Letter 1's description of Bailey's plans, in 2006, to form a Bloods "chapter" at "Forest Park & Windsor Mill" with "full support" from "the mainstream of the United Blood Nation" in "New York & California & Chicago" thus provides relevant context and completes the story of the crime on trial.

### C. Letter 2 Is Admissible Under Rule 404(b)

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character or propensity to commit a crime, but is admissible for any valid purpose, including to prove motive, intent, plan, knowledge, *modus operandi* and lack of mistake. *See United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009); Fed. R. Evid. 404(b). Rule 404(b) is a rule of inclusion, "admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Young*, 248 F.3d 260, 271–72 (4th Cir. 2001) (citation omitted); *see also Basham*, 561 F.3d at 326; *United States v. Young*, 248 F.3d 260, 271–72 (4th Cir. 2001).

For extrinsic evidence to be admissible under Rule 404(b), the proffered evidence must be (i) "relevant to an issue other than character," *e.g.*, knowledge, intent, modus operandi, or absence of mistake, *United States v. Siegel*, 536 F.3d 306, 317–18 (4th Cir. 2008); (ii) "necessary to prove an element of the crime charged," or to prove context, *United States v. Queen*, 132 F.3d 991, 995, 998 (4th Cir. 1997); and (iii) reliable, *id.* at 995. In addition, "the probative value of the evidence must not be substantially outweighed by its prejudicial effect," which "involves a Rule 403

determination." *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010).

    1. <u>Letter 2 Is Relevant to Prove Motive, Intent, Knowledge, and *Modus Operandi*</u>

Evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes." *Queen*, 132 F.3d at 997; *see also id.* at 997 (noting that "the high degree of similarity between the prior acts and the act with which Queen was charged supports the finding that the acts were relevant to intent"); *United States v. Rawle*, 845 F.2d 1244, 1247 n.3 (4th Cir. 1988) (evidence is relevant if it is "sufficiently related to the charged offense"); *United States v. Cabrera-Beltran*, 660 F.3d 742, 755 (4th Cir. 2011) (affirming admission of prior drug transactions because "the same drugs were sold in similar quantities").

Here, the crimes, wrongs, and acts described in Letter 2 are relevant to prove motive, intent and *modus operandi* with respect to the murder of Anthony Hornes. Bailey is alleged to have murdered Hornes to avenge the death of MMP member Maurice Braham, a/k/a "Mookie," who had been killed earlier the same evening. ECF 515, at 32 (Overt Act 98). The government will prove that shortly after Braham was killed, Bailey got into a car driven by Jamal Lockley and rode around the Howard Park neighborhood looking to retaliate against members of the rival drug trafficking organization he believed to be responsible for Braham's death. Bailey saw Hornes walking down the street in the 4700 block of Haddon Avenue, hopped out, and shot him in the head with a 9mm caliber firearm, killing him. There were no indications that Bailey knew Hornes, or that Hornes had any connection to the Howard Park drug trafficking organization or to Braham's

murder.[6] Bailey's method of "retaliating" was to kill a perfect stranger simply because he was in the wrong neighborhood at the wrong time.

The Hornes murder bears a striking similarity to the murders Bailey describes in Letter 2. In Letter 2, Bailey explains that when he lost certain Bloods "soljahs," he "felt nothing [except] the adrenaline to avenge." He recounts how he "shot, hopped out & stabbed so many people in that vicinity on G.P." in order to avenge the death of a particular soldier named "Bill." Letter 2 is therefore relevant to Bailey's *motive* for killing Hornes (adherence to a blood-for-blood code requiring immediate vengeance for the killing of a fellow gang member), his *intent* (to commit a retaliatory murder), and his *modus operandi* (to hop out and shoot people in the rival's territory with little or no concern for whom his bullets struck). The high degree of similarity between Bailey's prior wrongs and the crimes on trial in terms of mental state and methodology—makes them highly relevant.

2. Letter 2 Is Necessary

Second, the crimes, wrongs, and acts described in Letter 2 are necessary to proving Bailey's knowledge and intent with respect to the charged racketeering conspiracy. Evidence is necessary, for purposes of Rule 404(b), when it "is an essential part of the crimes on trial or when that evidence furnishes part of the context of the crime." *United States v. McBride*, 676 F.3d 385, 398 (4th Cir. 2012). Here, the government must prove not only that Bailey *knowingly and willfully* joined the racketeering conspiracy, but the *scope* of that conspiracy—in other words, what types of racketeering acts were reasonably foreseeable to Bailey as part of the conspiratorial agreement. The uncharged conduct described in Letter 2 relates directly to Bailey's state of mind in joining

---

[6] As it turned out, Hornes had spent the day training for a job at Yellow Cab and the evening at home with his wife and her children. He went out to buy cigarettes and never returned.

10

the conspiracy and the scope of the conspiracy. By furnishing evidence of Bailey's motive, intent, and *modus operandi* with respect to the Hornes murder, Letter 2 also provides evidence that Bailey knowingly and willfully conspired to conduct and participate in MMP's affairs through a pattern of racketeering activity *that included murder*. In other words, evidence that Bailey committed similar murders in the past in order to avenge a fellow gang member is necessary because it provides circumstantial evidence of Bailey's intention to participate in the conspiracy, and his knowledge regarding the types of crimes it would encompass. *See United States v. Rooks*, 596 F.3d 204, 211–12 (4th Cir. 2010) ("That the evidence was not critical to the prosecution's case against [the defendant] does not render it unnecessary . . . the evidence is necessary in the sense that it is probative of an essential claim or an element of the offense").

    3. Letter 2 Is Reliable

Evidence is reliable if it has a sufficient factual basis that could conceivably be credited by "a rational and properly instructed juror." *United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993). This requirement is not particularly onerous; indeed, it may be satisfied solely by the uncorroborated testimony of a cooperating witness. *See United States v. Hadaway*, 681 F.2d 214, 218–19 (4th Cir. 1982); *see also United States v. Penniegraft*, 641 F.3d 566, 575 (4th Cir. 2011) (testimony of arresting officer sufficient to establish reliability). Here, the government seeks to offer highly credible evidence in the form of the defendant's *own* statements. These statements, standing on their own, are more than sufficient to pass the reliability test under Rule 404(b).

    4. Letter 2 Will Not Pose a Danger of Unfair Prejudice

Once a court finds that evidence of extrinsic acts is admissible under Rule 404(b), a court should only exclude it if its probative value is "substantially" outweighed by its prejudicial effect. *Sanchez*, 118 F.3d at 195–96. Like Rule 404(b), "Rule 403 is a rule of inclusion, generally favoring

admissibility." *United States v. Udeozor*, 515 F.3d 260, 264–65 (4th Cir. 2008).  Evidence found to be relevant and probative under Rule 404(b) should be excluded under Rule 403 only in those instances where the trial judge believes there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the proffered evidence.  The admission of extrinsic act evidence does not result in unfair prejudice under Rule 403 where such evidence does not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged.  *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995).

      Here, the proffered 404(b) evidence will not suggest decision on an improper basis.  Rather, the evidence will be offered for a limited and legitimate purpose: to prove motive, intent, and *modus operandi* with respect to the murder of Anthony Hornes, and knowledge and intent regarding the scope of the racketeering conspiracy.  Nor does the proffered 404(b) evidence involve conduct any more sensational or disturbing than the crimes with which Bailey and his co-defendants are charged.  To the contrary, the jury will be presented with abundant evidence that Bailey and his co-defendants participated in dozens of murders, attempted murders, and conspiracies to commit murder in furtherance of the charged racketeering conspiracy.  *See United States v. Powers*, 59 F.3d 1460, 1467–68 (4th Cir. 1995) (holding that evidence the defendant repeatedly raped his daughter was not unduly prejudicial and hence was admissible under Rule 404(b) in prosecution for aggravated sexual abuse of a minor because the evidence was highly probative and judge gave limiting instruction thereby obviating potential for prejudice).

      Further, to address any danger of unfair prejudice, the Court may give an extensive limiting instruction, informing the jury that it may only consider the proffered evidence for appropriate purposes.  The Fourth Circuit has expressed great confidence in the efficacy of such instructions.

*See*, *e.g.*, *United States v. Mohr*, 318 F.3d 613, 620 (4th Cir. 2003) ("[A] careful limiting instruction significantly ameliorated any possible unfair prejudice."); *Powers*, 59 F.3d at 1468–69 (noting that cautionary or limiting instructions generally obviate prejudice).

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court admit Dante Bailey's 2006 jail letters pursuant to Fed. R. Evid. 902(1) and 404(b).

Respectfully submitted,

Robert K. Hur
United States Attorney

By: _____/s/_____
Christina A. Hoffman
Lauren E. Perry
Assistant United States Attorneys
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on February 25, 2019, a copy of the foregoing Motion in Limine was electronically filed with the Clerk of Court via CM/ECF and thereby served on all counsel of record.

          \_\_\_/s/_____
          Christina A. Hoffman
          Assistant United States Attorney